**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TRAVIS J. CRISP,**

      **Plaintiff,**

  v.

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

Case No. 2:15-cv-00001
Judge Gregory L. Frost
Magistrate Judge Elizabeth P. Deavers

**REPORT AND RECOMMENDATION**

     Plaintiff, Travis J. Crisp, brings this action under 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits. This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 14) the Commissioner's Memorandum in Opposition (ECF No. 19), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.  BACKGROUND**

     Plaintiff filed his application for benefits on April 7, 2011, alleging that she has been disabled since May 10, 2008. (R. at 185.) Plaintiff alleges disability from bipolar disorder, post-traumatic stress disorder, avoidant personality disorder, and antisocial personality disorder. (R. at 78.) Plaintiff's application was denied initially and upon reconsideration. (R. at 98, 127.) Plaintiff sought a *de novo* hearing before an administrative law judge.

     Administrative Law Judge Irma J. Flottman ("ALJ") held a hearing on April 16, 2013, at which Plaintiff, represented by counsel, appeared and testified. (R. at 43-77.) On July 26, 2013,

the ALJ issued a decision finding that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 34.) On November 6, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II. THE ADMINISTRATIVE HEARING

Vocational Expert Brian Womer (the "VE") testified at the administrative hearing. He identified Plaintiff's past relevant work as fast food worker, general laborer, and bottle packager. (R. at 71-72.) The ALJ asked the VE whether a hypothetical person with Plaintiff's age, education, work experience, and limitations that would eventually become the ALJ's residual functional capacity determination could perform any of Plaintiff's past work. (R. at 72.) The VE responded that the hypothetical person could perform the jobs of general laborer and hand packager, but not the job of fast food worker due to the amount of required interaction with others. (*Id.*) The VE also identified other unskilled jobs in the regional economy for which Plaintiff would be qualified. (*Id.*)

The ALJ then posed a series of hypothetical additional limitations. The ALJ described a hypothetical individual who "should not have interaction with the general public and no team work with co-workers." (R. at 73.) The ALJ also specified that the hypothetical individual would be "off task more than ten percent of the workday in addition to regularly scheduled breaks due to symptoms associated with anxiety and the bipolar [disorder]." (*Id.*) The VE testified that the hypothetical individual would be unable to maintain any unskilled job. (R. at 74.)

The ALJ posed a third hypothetical question with limitations in four different work areas. The ALJ described an individual who "in their ability to understand, remember and carry out

instructions would lose focus easily, resulting in difficulty following multi-step instructions." (*Id.*) The hypothetical person's "attention, maintaining attention and concentration and maintaining persistence/ pace to perform simple tasks . . . would deteriorate over extended time periods, slowing the performance in completing simple, repetitive tasks, so basically slower . . . throughout the workday." (R. at 74-75.) The hypothetical person would also have "difficulty holding appropriate adult-level conversations in the workplace and be unaware if he's being exploited by an employer or co-worker." (R. at 75.) As a final limitation, the ALJ described a person whose reaction to "stress and pressure would lead to increased anxiety, meaning he would have decreased attention and concentration resulting in . . . slowed work performance and poor frustration tolerance." (*Id.*) The VE concluded that "an individual so limited wouldn't be able to do the jobs . . . indicated or sustain full-time, entry-level, unskilled work." (*Id.*)

### III.  MEDICAL RECORDS

#### A. Tracy Detwiler, PA-C

Ms. Detwiler is a certified physician's assistant at Consolidated Care, a mental health facility at which Plaintiff received the bulk of his documented care. On September 17, 2012, Ms. Detwiler examined Plaintiff and reported that he demonstrated very poor eye contact. (R. at 641.) She also noted that his thought process was clear, linear, and goal directed, but that he demonstrated an "angry" affect. (*Id.*) She stated that Plaintiff had a "fair understanding of his mental health issues." (*Id.*) On January 14, 2013 her progress notes indicate that Plaintiff had not attended therapy since August 2012 and that he discontinued his medication after running out of refills without calling for a follow-up appointment. (R. at 638.) Ms. Detwiler reported that he displayed "clear, linear" thinking but that his mood was "depressed, angry" and his affect "blunted." (*Id.*) On February 18, 2013 Ms. Detwiler examined Plaintiff and indicated that he

had "much better eye contact today but still avoids [it] at times." (R. at 635.) She found his affect "flat." (*Id*.)

On February 18, 2013, Ms. Detwiler completed a mental residual functional capacity questionnaire. In the social interaction check block portion, Ms. Detwiler opined that Plaintiff has marked impairments in his ability to accept instruction from supervisors, work with others, respond appropriately to co-workers, relate to the public, and maintain socially appropriate behavior. (R. at 599.) She opined that none of these impairments would change with only minimal required interaction with others. (*Id*.) In the adaptation check block portion, Ms. Detwiler opined that Plaintiff has marked impairments in the ability to respond appropriately to changes in work setting, remember locations, workday procedures and instructions, and behave predictably, reliably and in an emotionally stable manner. (R. at 600.) She further opined that Plaintiff had an extreme impairment in the ability to tolerate customary work pressures. (R. at 601.) Ms. Detwiler also stated that she believes Plaintiff would likely have more than five unscheduled absences from work per month. (*Id*.) She also stated her opinion that Plaintiff's condition would likely deteriorate under the stress of regular employment based on Plaintiff's statements that he lost his last two jobs "due to inability to tolerate work stress" and Plaintiff's statement that he had "gone off on coworkers and supervisors." (*Id*.)

## B. Regina McKinney, Psy. D.

Dr. McKinney conducted a disability examination and functional assessment of Plaintiff on September 21, 2011. She recorded Plaintiff's account of his activities of daily living in which he reported that he lives in an apartment with two roommates, has a driver's license, conducts regular grooming and personal hygiene. (R. at 335.) Plaintiff also performs some chores and

occasionally cooks for himself.  (*Id.*) He goes grocery shopping, but has few friends and spends a majority of his time at home.  (*Id.*)

According to Dr. McKinney, Plaintiff was "cooperative " and "clean and neat."  (*Id.*)  He established adequate rapport, but "appeared to be depressed and had limited energy."  (R. at 335-336.)  Plaintiff reported "occasional auditory hallucinations," but noted that medication reduced their frequency.  (R. at 336.)  Dr. McKinney observed that Plaintiff was alert and attuned to his environment.  (*Id.*)  She also noted, however, that "[h]is remote recall skills were not strong, but his short-term memory skills were adequate."  (*Id.*)  Dr. McKinney described Plaintiff's reasoning skills as "marginally adequate" and his general level of intelligence as "between the borderline and low average range."  (*Id.*)  Dr. McKinney determined that Plaintiff's "judgment appears to be marginally sufficient to make decisions affecting his future and to conduct his own living arrangements efficiently.  (*Id.*)

Dr. McKinney reported that Plaintiff could not complete serial sevens but could complete serial threes at a slowed pace.  (*Id.*) Plaintiff could recall four digits forward and backward. (*Id.*) He could complete addition and subtraction problems, but only could complete multiplication and division problems with difficulty.  (*Id.*)

Dr. McKinney diagnosed a severe, recurrent major depressive disorder with psychotic features, in addition to cannabis dependence and alcohol abuse.  (R. at 337.)  In her functional assessment, Dr. McKinney opined, "Due to a preoccupation with depressive symptoms, he may lose focus easily, resulting in difficulty following multistep instructions."  (R. at 338.)  Dr. McKinney further opined that Plaintiff's "attention and concentration skills were not strong during the evaluation and may deteriorate over extended time periods, slowing his performance in completing simple repetitive tasks."  (*Id.*)  Dr. McKinney also concluded that "[d]ue to some

cognitive limitations, he may have difficulty holding appropriate adult-level conversations in the workplace or be unaware if he is being exploited by an employer or coworker." (*Id.*) In conclusion, Dr. McKinney stated her belief that "[s]tress and pressure may lead to increased anxiety and decreased attention and concentration skills." (*Id.*)

### IV.    THE ADMINISTRATIVE DECISION

On July 26, 2013, the ALJ issued her decision. (R. at 17.) The ALJ found that Plaintiff met the insured status requirements through December 31, 2010. (R. at 22.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since her alleged onset date of May 10, 2008. (*Id.*)

The ALJ found that the record contained "no information documenting a medically determinable impairment at any time through December 31, 2010," the date that Plaintiff's insured status expired. (R. at 23.) The ALJ also found that Plaintiff had the severe impairments of "depressive and anxiety disorders, as well as cannabis abuse and alcohol abuse." (*Id.*) These

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairments, however, were not documented until Plaintiff first sought treatment in March of 2011. (*Id.*) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four of the sequential evaluation process, the ALJ found that Plaintiff had the following residual functional capacity ("RFC") to perform the following:

> a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to performing simple, routine, and repetitive, one- or two-step tasks with no strict production rate or fast pace and no more than occasional interaction with co-workers, supervisors, and the public.

(R. at 29.) In reaching his determination, the ALJ found that "the record demonstrates that [Plaintiff] does experience some symptoms of depression and anxiety. However, the record further demonstrates that the claimant is fully capable of performing routine tasks both at home and in a work environment when he is motivated to do so." (R. at 30.) The ALJ determined that "Dr. McKinney's opinion is entitled to some weight." (R. at 32.) The ALJ cited Dr. McKinney's findings as "consistent with the ability to perform simple, routine tasks" and "the ability to perform the reduced range of unskilled work set forth above." (R. at 30, 32.)

In evaluating Ms. Detwiler's findings, the ALJ noted that, as a physician's assistant, she "is not an acceptable source whose opinion is entitled to any special deference." (R. at 32.) The ALJ concluded that, pursuant to SSR-6-3p, Ms. Detwiler's opinion "is not entitled to adjudicative weight." (*Id.*)

The ALJ determined that Plaintiff is unable to perform his past work. (R. at 33.) The ALJ, relying on the VE's testimony, then determined that Plaintiff could "perform the requirements of approximately 4,400 representative jobs at the medium exertional level, such as laundry worker, kitchen helper, and machine packager," all of which VE identified as existing in

significant numbers in the regional and national economies.  (R. at 34.)  The ALJ, therefore, concluded that Plaintiff is not disabled under the Social Security Act.  (R. at 34.)

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

As an initial matter, the Undersigned notes that the ALJ found, "The record contains no information documenting a medically determinable impairment at any time through December 31, 2010," the Plaintiff's date last insured. (R. at 23.) In order to establish disability under the Social Security Act, Plaintiff bears the burden of proving that he has a medically determinable impairment that is expected to result in death or last for a period of at least twelve months and that the impairment leaves him unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Plaintiff must also be "under a disability" as of his date last insured. 42 U.S.C. § 423(a); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

Plaintiff's disability insurance coverage lapsed on December 31, 2010. He is, therefore, entitled to benefits only if he became disabled by that date. At the administrative hearing, Plaintiff described his difficulty maintaining employment prior to his date last insured. According to Plaintiff, he left a job at McDonald's after two months for reasons that he did not remember. (R. at 50.) Plaintiff also stated that he worked at a plastics factory, but was fired for unstated reasons. (R. at 52.) Plaintiff said that he also had a job as a totes cleaner for approximately one year and that he left voluntarily due to mistreatment and lack of support from coworkers and managers. (R. at 48-49.) Plaintiff, however, did not offer testimony describing limitations due to mental health impairments he may have had prior to his last date insured. Similarly, the record contains no evidence that Plaintiff suffered a mental health impairment prior to his date last insured. Even if the record did contain such evidence, however, any conclusion with respect to resulting work limitations would be wholly speculative. The

Undersigned finds, therefore, that substantial evidence supports the ALJ's determination that Plaintiff was not disabled by his last date insured.  Although this finding is dispositive of this matter, the Undersigned finds that even if record evidence existed to show Plaintiff's impairments began prior to his last date insured, the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence in the record.

Plaintiff puts forward two assignments of error.  Plaintiff contends that the ALJ failed to properly evaluate Ms. Detwiler's medical source opinion under SSR 06-3p and that the ALJ's RFC is not supported by substantial evidence. (ECF No. 9 at 7, 13.)

**A.  The ALJ's Analysis of Ms. Detwiler's Medical Source Statement**

Plaintiff contends that the ALJ failed to properly evaluate Ms. Detwiler's medical source statement.  Specifically, Plaintiff argues that the ALJ did not discuss six of the limitations that Ms. Detwiler identified as marked or extreme.  (ECF No. 9 at 7; R. at 604-606.)  Plaintiff also argues that the ALJ failed to properly analyze Ms. Detwiler's opinion under SSR 06-3p and that the ALJ's credibility determination is not supported by substantial evidence in the record.

**1.  ALJ's credibility analysis meets the standards set forth in SSR 06-3p**

Plaintiff contends that the ALJ applied an incorrect legal standard in applying SSR 06-3p, which lists factors set forth in 20 C.F.R. § 404.1527(c) that the ALJ must consider in evaluating opinion evidence, regardless of its source.  (ECF No. 9 at 9-10.)  According to Plaintiff, the ALJ erroneously concluded that Ms. Detwiler's "assessment is due no adjudicative weight because it was not from an acceptable medical source."  (ECF No. 9 at 9.)  Plaintiff urges the Court to find that under a proper analysis, the ALJ would be forced to give Ms. Detwiler's opinion more weight, resulting in a finding of disability.

The regulations state that the ALJ, regardless of a medical opinion's source, will evaluate the opinion based on the following factors: whether there was an examining relationship,

whether the opinion was made by a treating source, the length of the treating relationship, the supportability of the opinion's conclusions, the consistency of the opinion with the record as a whole, any specialization of the opinion source, and other factors raised by Plaintiff.  20 C.F.R. § 404.1527(c).

In her written opinion, the ALJ noted that Ms. Detwiler is not an acceptable source.  (R. at 32.)  In contrast to Plaintiff's characterization of the written opinion, however, the ALJ found that Ms. Detwiler is not "entitled to any *special* deference."  (*Id.* (emphasis added).)  The ALJ specifically concluded that "[w]hen her opinion is weighed under the provisions of SSR-6-3p, it is not entitled to adjudicative weight."  (*Id.*)  In his analysis, the ALJ noted the nature and extent of the treatment relationship.  (*Id.*)  The ALJ also made specific findings with respect to the supportability of Ms. Detwiler's conclusions and their consistency with the record as a whole.  (R. at 32-33.)  After discussing these factors at some length, the ALJ concluded, "As a result, Ms Detwiler's opinion is not supported by the objective and clinical findings set forth elsewhere in the evidentiary record.  Accordingly, her opinion is not entitled to any adjudicative weight."  (R. at 33.)  The Undersigned finds, therefore, that the ALJ properly applied the factors set forth is SSR 03-6p and 20 C.F.R. § 404.1527(c).

**2. ALJ's credibility determination is supported by substantial evidence**

Plaintiff also argues that the ALJ's findings with respect to Ms. Detwiler's credibility as an "other source" are not supported by substantial evidence in the record.  (ECF No. 9 at 10.)  In particular, Plaintiff challenges the ALJ's finding that Ms. Detwiler's opinions are inconsistent with the record as a whole.  (*Id.*)  Plaintiff also contends that Ms. Detwiler's opinions are, in fact, supported by the consultative examiner's observations and findings.  (ECF No. 9 at 10.)  This Court, however, will not second-guess the ALJ's opinion when substantial evidence exists to

support it.  *Rabbers*, 582 F.3d at 651.  To show that the ALJ's findings are not supported by substantial evidence, therefore, it is not enough to show that substantial evidence exists in the record that tends to contradict the ALJ's finding.  Rather, Plaintiff must show that no substantial evidence exists that supports the challenged finding.  *Blakley*, 581 F.3d at 406.

In her written opinion, the ALJ found that Ms. Detwiler's conclusion that Plaintiff experiences marked difficulty in relating to others is contradicted by Ms. Detwiler's own notes, as well as the record as a whole.  (R. at 32-33.)  In support of her conclusion, the ALJ cited Plaintiff's cooperative nature during treatment and his ability to play guitar in clubs in front of large crowds for extended periods of time.  (R. at 33, 496.)  The ALJ also noted that "treatment records from [Plaintiff's] family physician confirming symptoms stabilization with medication management" contradicted Ms. Detwiler.  (R. at 33.)  Furthermore, the ALJ found that Ms. Detwiler's own notes contradict some of her conclusions because Plaintiff reported that he is "able to cope [with his ideations] because 'I don't want to lose my girlfriend or hurt people.'" (*Id.*; R. at 641.)  The ALJ also stated that Ms. Detwiler's finding that Plaintiff lost previous jobs because he could not tolerate work stress and could not control his temper are unsupported by objective evidence in the record and merely record Plaintiff's own statements.  (R. at 33.)  Additionally, the Court notes that Plaintiff was generally cooperative and showed no signs of anger during the hour-long administrative hearing.  (R. at 41-77.)

The Undersigned, therefore, finds that the ALJ's credibility determination is supported by substantial evidence in the record.  Accordingly, Plaintiff's first assignment of error is without merit.

**B.  Substantial Evidence supports the ALJ's Residual Functional Capacity Determination**

In his second assignment of error, Plaintiff argues that the ALJ mischaracterized Dr. McKinney's opinion.  Plaintiff contends that, as a result, the ALJ's RFC determination is not supported by substantial evidence in the record.  (ECF No. 9 at 13.)

At step four, the ALJ determined that Plaintiff retained the residual functional capacity to perform work at all exertional levels limited to simple, routine, and repetitive tasks without strict production rates or fast pace and with only occasional interaction with others.  (R. at 29.)  In support of her finding, the ALJ found that Dr. McKinney's opinion, which the ALJ gave "some weight," is "consistent with the ability to perform the reduced range of unskilled work set forth [in the ALJ's RFC determination]."  (*Id.*)

Plaintiff challenges the ALJ's characterization of Dr. McKinney's findings.  According to Plaintiff, at the administrative hearing the ALJ incorporated Dr. McKinney's findings in a hypothetical question to the VE.  (ECF No. 9 at 15.)  The ALJ's hypothetical question described an individual who would easily lose focus, only with difficulty hold appropriate adult-level conversations, have decreased attention and concentration, not interact or work with co-workers, and be off task more than ten percent of the time.  (R. at 74-75.)  The VE responded that such an individual would not be able to perform available jobs in the economy.  (R. at 75.)  Plaintiff argues that Dr. McKinney's opinions, therefore, support the conclusion that Plaintiff cannot perform any work available in the economy.  (ECF No. 9 at 15-16.)

Plaintiff is correct that the ALJ's RFC does not reflect a person with the limitations described in the hypothetical question.  That is not to say, however, that Dr. McKinney's opinion describes a person with the limitations set out in the hypothetical question.  Put another way, Dr. McKinney did not expressly find the limitations that Plaintiff complains the ALJ failed to

incorporate into the RFC.  As noted above, in her functional assessment, Dr. McKinney opined that Plaintiff "*may* lose focus easily." (R. at 338. (emphasis added).)  She also found that Plaintiff's attention and concentration "*may* deteriorate over extended time periods." (*Id*. (emphasis added).)  Dr. McKinney also indicated that Plaintiff "*may* have difficulty holding appropriate adult-level conversations." (*Id*. (emphasis added).)  Finally, she found that stress and pressure "*may* lead to increased anxiety and decreased attention and concentration skills." (*Id*. (emphasis added).)  Dr. McKinney's opinion, then, does not specify Plaintiff's actual limitations, but merely states what his limitations might be or might become at some point in the future.  Even had the ALJ given Dr. McKinney's opinion more than some weight, therefore, the ALJ would not be obliged to incorporate such speculative findings into her RFC determination.  20 C.F.R. § 404.1527(a)(2); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 n.3 (6th Cir. 2009).

In her written opinion, the ALJ discussed Dr. McKinney's opinions at length.  (R. at 25-26.)  The ALJ summarized some of Dr. McKinney's initial observations that Plaintiff's appearance was "clean and neat," his thought process was "shallow and concrete," his language skills were adequate," and his judgment "marginally sufficient for him to make decisions affecting his future and to conduct his own living arrangements." (*Id*.)  The ALJ observed that Plaintiff "interacted and responded directly to questions." (R. at 26.)  She then summarized Dr. McKinney's conclusions.  The ALJ noted that, according to Dr. McKinney, "claimant's attention and concentration skills were not strong." (*Id*.)  The ALJ also discussed Plaintiff's cooperative nature during Dr. McKinney's evaluation.  (*Id*.)

Although the ALJ disregarded Dr. MicKinney's more speculative conclusions, she gave some weight to Dr. McKinney's statements describing specific limitations.  As the ALJ explained, "Dr. McKinney's evaluation findings are consistent with the ability to perform

simple, routine tasks.  He was able to perform serial threes, but not serial sevens, he recalled four digits forward and backward, and he was able to perform simple addition and subtraction." (R. at 30.)  The state agency reviewing psychologists, whose opinions Plaintiff does not challenge, also found Plaintiff able to perform simple tasks within Plaintiff's RFC.  (R. at 84-86, 108-110.)  These findings also constitute substantial record evidence in support of the ALJ's RFC determination.  The record does not, however, contain medical source opinions indicating current limitations described in the ALJ's hypothetical question.  The ALJ is not required to adopt limitations in his or her RFC determination that are unsupported by the medical opinion evidence.  The Undersigned finds, therefore, that the ALJ's RFC determination is supported by substantial evidence in the record.  Accordingly, Plaintiff's second assignment of error is without merit.

## VII.    CONCLUSION

In conclusion, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, the Undersigned **RECOMMENDS** that the Commissioner of Social Security's decision be **AFFIRMED** and Plaintiff's Statement of Errors be **OVERRULED**.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:  February 19, 2016                                     */s/ Elizabeth A. Preston Deavers*
                                                                         ELIZABETH A. PRESTON DEAVERS
                                                                         UNITED STATES MAGISTRATE JUDGE